Francisca Sosa Fernández, Plaintiff and Appellant, *v.* José Sosa Oliva, Defendant and Appellee.*

No. 4914. Argued February 18, 1930.—Decided November 27, 1931.

* Note.—On appeal to the U. S. Circuit Court of Appeals for the First Circuit, this decision was reversed and the case remanded. See 68 F. (2d) 338.

852

*Juan B. Soto* for appellant. *J. H. Brown, C. Ruiz Nazario, Blondet & Campillo,* and *G. E. González* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

Ramona Fernández Betancourt died in Río Grande on the 3rd of March, 1907. She was married to José Sosa Oliva, defendant herein. The title of the suit, in Spanish, is "Reclamación y entrega de bienes hereditarios." Perhaps no better understanding could be had of these words than to say that the title signifies a suit for an accounting and delivery of hereditary share. The complaint recites the possession by the defendant of various pieces of real estate, some of them acquired immediately after the death of Ramona Fernández Betancourt and others acquired during later years. The prayers of the complaint are, assuming these various properties to belong to the matrimonial society existing between Ramona Fernández Betancourt and José Sosa Oliva, that the maternal inheritance of Francisca Sosa Fernández, the plaintiff daughter in this case, should be declared against such properties and turned over to the judicial administrator for distribution, and that the various records in the registry in favor of José Sosa Oliva be canceled.

The case went to trial and the District Court of San Juan rendered judgment for the defendant, José Sosa Oliva. On

appeal, the defendant attacks the complaint or perhaps more particularly the theory of the action as tried. He maintains that there is no such action in Puerto Rico as the declaration of a resulting trust, which apparently, as he maintains, is the theory of the action before us. Now, while the defendant may be right that none of the remedies specifically sought by the plaintiff in her prayers could be obtained in the suit, nevertheless, one could not read the title and follow the proceedings at the trial including the opinion of the judge without becoming convinced that what the plaintiff was seeking of her father was in point of fact an accounting, and that all the parties so regarded the suit. So far we see no reason why there was any necessity of making the judicial administrator a party, and the defendant presented no objection to the lack of necessary parties. Perhaps, to turn over the property to the judicial administrator he should have been made such a party. Nevertheless, both the father and the daughter are before the court and this Court may decide whether José Sosa Oliva owes anything to his daughter by reason of her maternal inheritance, whether such inheritance springs from the separate property of Ramona Fernández Betancourt, or whether it formed part of the community property to be divided at her death among her husband and her two children, that is to say, half to the widower and one-fourth each to the two surviving children.

It is conceded that the father of Ramona Fernández Betancourt left $9,980.98 to his daughter. The defendant maintains that from this amount the firm of Fernández & Sobrino, who owed the money, deducted the sum of $5,520.96, inasmuch as the said Ramona Fernández had previously received that amount. The theory of the defendant is that Ramona Fernández only received the said sum of $5,520.96 and then used it for her own purposes. We are not satisfied with this explanation. At the time of the supposed delivery of the said amount Ramona Fernández Betancourt was married to José Sosa Oliva. No attempt is made by the de-

fendant to explain how and when and where the said amount disappeared. There is a fair presumption that the money went into the hands of the husband for the use of himself and his family, and in absence of a better explanation we feel bound to hold that the whole sum of $9,980.98 came under the control of the said husband and administrator. Similarly, we are not satisfied with the explanation of the disappearance of the remaining $4,470.02. The presumption should be that any money the wife spent was paid out of the ganancial property, and this is true in respect of the $5,520.96, or of the $4,470.02. It is necessary that a husband who has in his hands funds belonging to his wife should explain their disappearance. The court below apparently believed the statement of José Sosa Oliva, and may have had a theory that the money was paid out for the wife's own use and should come out of her separate property, but that is not the theory of the law.

We come then to the ganancial property. At the trial, the case turned largely on supposed admissions made by José Sosa Oliva in two wills made by him. A will made in 1907 fixed the amount of property in the hands of José Sosa Oliva at $25,136. The said will also showed that José Sosa Oliva charged himself at that time with the $9,980.98 (the will says $9,300) received by his wife from her father. This would leave as matrimonial property between fifteen thousand and sixteen thousand dollars.

The defendant presented at the trial a receipt from the Treasurer of Puerto Rico which showed in itself that the ganancial property amounted to $13,318. We shall discuss hereafter the fact that the defendant and the court below maintained that the amount to be distributed was about one-half of the $13,318. It is conceded by the defendant, and the court so held, that to the ganancial property, whatever it was, the sum of $2,000 should be added. So that if that amount is added to the sum of $13,318, the ganancial property would be between fifteen thousand and sixteen thousand

dollars, which is more or less the total amount with which José Sosa Oliva admitted or charged himself in the will made in 1907.

The court below found that the amount to be distributed, as shown by the receipt of the Treasury, was $6,498 and that $2,000 should be added to this amount. This was a clear error on the part of the court. The court and the defendant attempt to explain a mistake in the distribution of the portion that belonged to the son of José Sosa Oliva, stating that as the result of an error in calculation the son received twice as much as he should have received, due to some mistake made by attorney Herminio Díaz Navarro. However, how the mistake arose is not satisfactorily explained, and the treasury receipt itself shows, if examined with due care, the sum of $13,318. It is totally incredible that either José Sosa Oliva or attorney Herminio Díaz Navarro should have made a return of ganancial property greatly in excess of what the married couple actually owned and possessed. It seems to us that the judge below and the defendant examined this treasury receipt very carelessly and took the amount of $6,498 as being the total value of the property, when it was the exact amount on which taxes were imposed. In other words, a transfer tax was to be paid on the hereditary portion of the two children. No taxes were due from the part that belonged to José Sosa Oliva, as he was not inheriting that portion from his wife.

In the will made in 1907 the defendant also said that upon his marriage, date not stated, he had no property of his own. At the trial, however, he made the statement that at the time of his marriage many years back he owned about five thousand dollars. According to his own statement, this property consisted of cattle and a growing crop on real estate belonging to the Central Canóvanas. We are not convinced by the statements we find in the record that the property that he owned at that time or his interest in the growing crop could have amounted to five thousand dollars,

or that he clearly had that or any smaller amount in his hands, after deducting his own expenses of living. It is exceedingly indefinite. When asked why he stated in his will that he had no property upon marrying, he said that he did so to protect his tiny children against the claims of natural offspring because he was most anxious that his legitimate children should receive, undisturbed, the inheritance. The statement in his will is the stronger evidence, and we so find.

In addition to the will made in 1907 the defendant made another in 1912. This will was presented in evidence in a mutilated form. There was a page or more which apparently recited the property belonging to José Sosa Oliva. This page was missing, torn away from its matrix. We can not impute the blame for this mutilation to anybody, but we think a duty arose on the part of the defendant, supposing the alleged will to be admissible as evidence, to explain or from his books to fill out the missing data. The will of 1907 showed that the defendant in point of fact kept books, and he made the statement of his property in 1907 from his said books. He ought to have been able to explain from the books of 1912 what they showed. The failure to do so is either a suppression of evidence or something very similar thereto, and militates against the defendant.

Ferdinand R. Cestero was called as a witness for the plaintiff. He had been a witness to the will of 1912, and he gave testimony tending to show that José Sosa Oliva charged himself with a large amount belonging to his children. The court did not believe the statements of Cestero, not apparently because he doubted the integrity of the witness, but because the memory of the latter, according to the court, was entirely faulty. The witness did not remember where the office of the notary was located, did not remember some of the people present, and was mistaken in saying that the document was typewritten when in point of fact it turned out to be written by hand. We do not think that these mistakes in the testimony of a witness given in 1927 should be charged against

him when he was referring to facts which occurred in 1912. They were mistakes that anyone might naturally have made as to minor details and still not be mistaken on the principal fact. In other words, we are inclined to the belief that the court should not for the reasons that it stated have entirely refused to consider the testimony of Cestero.

Admitting that the defendant owed a certain amount to his daughter for her maternal inheritance, the defendant maintained, and the court held, that said defendant was entitled to deduct from the accounting some $2,000 paid to his daughter after she became of age, as defendant maintained, from her maternal inheritance. If the record be examined, nothing beyond his own indefinite statement will be seen to show that the father paid this amount to his daughter out of her maternal inheritance. Ordinarily, when a daughter has been living with her father and she becomes of age her father continues to pay her expenses if he has the money therefor. Ordinarily, no father will deduct from her inheritance the amounts he gives a daughter. There is no presumption that no money so paid was taken out of the inheritance of the daughter. We only find the actual payment of this amount.

We reach the conclusion that José Sosa Oliva should have been charged with the inheritance that Ramona Fernández Betancourt received from her father. The amount of the matrimonial property shown by the tax receipt, probably not overestimated, was $13,318. As held by the court, $2,000 should be added to that, making a total of $15,318. From this amount, $1,755.16, as found by the court, should be deducted for expenses connected with the funeral of Ramona Fernández Betancourt. So that the total amount to be divided was $13,562.84. Half of this, namely, $6,781.42, belonged to the children. Therefore, $3,390.71 belonged to the daughter. If half of her mother's estate amounting to $4,990.49 is added, the portion due the daughter would be $8,381.20. From this we are not satisfied that any part of

the money paid by the father to his daughter after she became of age should be deducted.

The wills in question were declarations against interest and apparently admissible in evidence. At least, no objection specifically on this ground was made in the court below.

The complaint in this case claimed as ganancial property the sum of $50,000, but we do not find in the evidence sufficient data to go beyond the amount of $8,381.20 aforesaid. It is very possible that the defendant, from 1907 on, used the ganancial property and increased his holdings by having the use of the said ganancial property or rather of the half belonging to the children. But a total demonstration of this is lacking in the record. We have also considered the possibility of the payment of interest on the said $8,381.20, but we shall not impose it because of the various payments that the defendant made to his daughter.

Therefore, the judgment appealed from should be reversed and another rendered adjudging that the defendant pay to his daughter, the complainant in this case, as her maternal inheritance the sum of $8,381.20, with legal interest from the date of this judgment, and costs.